UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RTG LLC,

     *Plaintiff/Counter-Defendant*,

v.                                          **Case No. SA-19-CV-0087-JKP**

LISA KATONA FODERA,

     *Defendant/Counter-Plaintiff*.

**ORDER GRANTING SUMMARY
JUDGMENT UNDER FED. R. CIV. P. 56(f)**

Before the Court are *Defendant's Motion for Award of Additional Relief under 28 U.S.C. § 2202 and for Entry of Final Judgment* (ECF No. 89); *Plaintiff's Response to Court's Notice of Intended Ruling under Fed. R. Civ. P. 56(f)* (ECF No. 90); *Plaintiff's Amended Response to Court's Notice of Intended Ruling under Fed. R. Civ. P. 56(f), (g)* (ECF No. 92); *Plaintiff's Response to Defendant's Motion for Award of Additional Relief under 28 U.S.C. § 2202 and for Entry of Final Judgment* (ECF No. 93); and *Defendant's Reply to RTG's Amended Response to Court's Notice of Intended Ruling under Fed. R. Civ. P. 56(f), (g)* (ECF No. 94). Because the Court's *Order Regarding Pretrial Filings* (ECF No. 86) [hereinafter "Prior Order"] prompted each of these filings, that is an appropriate starting point.

**I. PRIOR ORDER**

As it did in its Prior Order (ECF No. 86), and for ease of reference, the Court will refer to the parties as RTG and Katona. Furthermore, as used in this Order (and this case in general), (1) the "Jackson claim" originally held by Segundo Suenos LLC ("Segundo") consisted of a claim against Julian Jackson, to recoup the monies the receiver had recovered from the sale of Segundo's assets and paid to Jackson and (2) the "Jackson interest" (purchased by RTG at the sheriff's auction in California) consists of fifty percent of all royalty and other rights to the music of the Ohio

Players previously owned by Artist Rights Foundation, LLC, or Segundo. By operation of the judgment and sheriff's sale in California the Jackson claim essentially became the Jackson interest. An apt summary of how the Jackson claim became the Jackson interest is set out nicely in a prior order by the assigned Magistrate Judge. *See* ECF No. 61.

As noted in the Prior Order, the Court previously denied motions for partial summary judgment by each party (ECF No. 22 and 48) and granted Katona's motion for summary judgment (ECF No. 23) as to RTG's claims for interference with contract and with prospective business relationship, thus resulting in the dismissal of those claims with prejudice. *See* ECF No. 63. The Court thereafter partially reconsidered the two denials to clarify that the rulings "did not constitute an adjudication of the ownership rights of the Jackson interest" and that issue was to proceed to trial. *See* ECF No. 73.

In the original order, the Court used "the Jackson interest" to denote "the fifty-percent share of the copyright and monetary interests in the musical compositions and sound recordings of the Ohio Players (the "Jackson interest") purchased by RTG at the sheriff's auction in California." *See* ECF No. 63 at 3-4. And it definitively stated that it could not declare RTG as owner of that interest because the interest was transferred in violation of an injunction and RTG was not an innocent third party. *See id*. at 4-7, 8-9. It further noted a genuine dispute as to who lawfully owns the Jackson interest. *See id*. at 9. But that dispute was and is not between RTG and Katona; rather the dispute was whether Katona or Jackson himself was the lawful owner. *See id.* These rulings are clearly reflected in the following statement:

> The evidence shows that the Jackson claim was transferred in violation of an injunction, that Ryan had sufficient knowledge of the underlying litigation to put him in privity with Segundo, Raul, and Alfredo, and that RTG was not an innocent third-party purchaser of the Jackson interest. Consequently, RTG is not the lawful owner of the Jackson interest. The California default judgment and sheriff's sale are sufficiently questionable that the Court cannot, without more, conclude whether the Jackson interest should be returned to Jackson or turned over to Katona. This issue is a matter of genuine dispute.

2

*Id*. at 4.

The parties' proposed pretrial order prompted the Court to issue the Prior Order. The proposed order clearly reflected that a mistaken and broad view of issues remaining for trial. The parties, furthermore, agreed that Jackson was divested of his interest and that matter was not an issue for trial. Given the combination of the mistaken belief and the newly stated agreement as to whether Jackson has any possible interest in the fifty percent interest at stake in this litigation, the Court viewed it necessary to correct the mistaken belief. It thus explained that its summary judgment rulings did not determine whether Jackson or Katona was the lawful owner, but it had specifically ruled that, based on the summary judgment evidence, RTG is not the lawful owner. Consequently, the Court recognized that RTG had no claim that survived summary judgment and it is not the lawful owner of the Jackson interest. It further recognized that at this point in the litigation and for the remainder of this case, RTG is now merely a Counter-Defendant to any remaining counter-claims asserted against it.

Furthermore, based on the parties' agreement that Jackson was divested "of any rights or ownership in the Music of the Ohio Players," *see* ECF No. 80 at 6, the Court found that the sole factual dispute that had precluded it from declaring Katona as the legal owner had been apparently eliminated. It thus provided notice to the parties that it now appears proper to grant summary judgment under Fed. R. Civ. P. 56(f) and declare Katona the lawful owner. The Court stated that RTG may respond at the final pretrial conference set for October 29, 2021.

In addition, based solely on the summary judgment evidence, the Court utilized Fed. R. Civ. P. 56(g) to state that the following material facts are not genuinely in dispute and will be treated "as established in the case:" (1) RTG is not the lawful owner of the Jackson interest;  (2) RTG is not an innocent third-party purchaser of the Jackson interest; (3) the Jackson claim was transferred in violation of an injunction; (4) a prior federal judgment made Katona the lawful

owner of the Jackson claim.

Similarly, based upon the proposed pretrial order and agreements of the parties stated therein, the Court found the following matters are also not in dispute: (1) two sources (BMI and BMG) collect royalties on the music of the Ohio Players; (2) BMI has paid its collections into a Bankruptcy Court registry account; and (3) BMG has paid $257,202 to RTG on the Jackson Music Rights.

And finally, based upon the proposed pretrial order and the summary judgment rulings to date, (1) RTG has no existing claim in this case, (2) Katona has a claim for declaratory judgment that might be resolved through a Rule 56(f) ruling, (3) Katona has a claim asserted under Texas Uniform Fraudulent Transfer Act (or "TUFTA") that has not been addressed through summary judgment; and (4) Katona has a claim for money judgment for royalties RTG has received on the Jackson Music Rights.

## II. RESULTING FILINGS

The Prior Order resulted in five subsequent filings, Katona's motion for additional relief (ECF No. 89), RTG's preliminary (ECF No. 90) and amended (ECF No. 92) responses to the Prior Order, RTG's response (ECF No. 93) to Katona's motion, and Katona's reply (ECF No. 94) to RTG's amended response. In her responsive motion to the Court's order, Katona agrees that the Court should declare her the legal owner and also requests that the Court award her the $257,202 that BMG paid to RTG on the Jackson Music Rights. Further, upon granting her motion, Katona requests that the Court enter final judgment. By seeking entry of final judgment, Katona seeks to end this case entirely and resolve all remaining claims that might have remained for trial.

### A. Objection to Response Time

RTG's preliminary response initially objects to the timing of the Court consideration and argues that the Court has not given it a reasonable time to respond. The Court resolved this

objection by granting RTG an opportunity to file its formal response by 3:00 p.m. on November 4, 2021. Although RTG drops the objection in its amended response, the Court deems it prudent to consider the objection, nonetheless.

Prior to amendments to Rule 56 in 2010, "the general rule was that a district court was required to give ten days' notice prior to granting summary judgment on a basis not urged in a pending summary judgment motion." *Atkins v. Salazar*, 677 F.3d 667, 679 n.15 (5th Cir. 2011). Here, of course, the Court's proposed grant of summary judgment under Rule 56(f) is premised on a basis previously urged in Katona's motion for summary judgment. A new stipulation as to a relevant fact prompted invocation of Rule 56(f).

But, in any event, that general "rule was grounded in a strict reading of the text of the pre-2009 version of Federal Rue 56(c)." *Id*. Since the 2010 amendments, Rule 56 contains nothing to indicate what time period may constitute a reasonable time to respond. One commentator has noted:

> Generally speaking, this is not an issue for which hard-and-fast rules would be helpful or appropriate. The purpose of giving notice and a time to respond is to ensure that, as to any issue, the parties have a fair chance to marshal their evidence on that issue and present it to the court before the court assesses the sufficiency of the evidence on that issue. The amount of time needed for the parties to do that will depend on the issue and the circumstances in which the issue is raised.

Steven S. Gensler, et al., 2 Federal Rules of Civil Procedure, Rules and Commentary Rule 56 (2021 update) (Portion of commentary titled "The Court's Decision") (footnotes omitted). Whether a litigant has "sufficient notice of the possibility that summary judgment could be granted against it," depends on "the totality of the proceedings." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) (quoting *Turcar, LLC v. IRS*, 451 F. App'x 509 (6th Cir. 2011)).

Under the totality of the proceedings, the Court finds that it has accorded RTG sufficient notice of its intent to grant summary judgment against it on Katona's claim for declaratory judgment. The claim was fully litigated by the parties through motion practice. The undeniable

result of the summary judgment rulings was that RTG was not the legal owner of the Jackson interest and that, at that time, Katona could not be declared the legal owner because there was a genuine dispute of material fact as to whether Jackson was the legal owner. When the parties submitted stipulated facts in their proposed pretrial order, they agreed that Jackson has been divested of his rights. This newly undisputed fact was simply the missing piece that precluded the Court from entering summary judgment in Katona's favor on her motion.

Under these circumstances, and with full recognition of the reasonable notice requirement of Rule 56(f), the Court was comfortable with affording RTG less than forty-eight hours' notice of its intent. And while the Court finds that short notice reasonable under the circumstances, it granted RTG another six days to respond to the Rule 56(f) possibility and set the same deadline for RTG to respond to Katona's motion for additional relief. With the additional time, the Court finds no basis to sustain RTG's objection regarding the time provided for response. And, notably, Plaintiff has abandoned the objection in its amended response.

**B. Use of Fed. R. Civ. P. 56(g)**

RTG quarrels with the Court's use of Fed. R. Civ. P. 56(g) to treat certain facts as "not genuinely in dispute" and "as established in this case." The Court agrees that RTG contested the four listed facts during summary judgment. But the Court ruled against RTG on these matters and expressly found that, under the summary judgment evidence, RTG is not the lawful owner of the Jackson interest, the Jackson claim was transferred in violation of an injunction, RTG is not an innocent third-party purchaser of the Jackson interest, and a prior federal judgment made Katona the lawful owner of the Jackson claim.

By its terms Rule 56(g) invokes the discretion of the Court. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). "Rule 56(g) is 'ancillary' to the ultimate summary-judgment analysis, operating to 'salvage some results' from the time and resources spent

in deciding unsuccessful summary-judgment motions." *Id*. And while it may be "best practices" to issue a Rule 56(g) "order contemporaneously with its summary-judgment decision" and make the order in writing, the rule does not require it. *See id*. at 416. A court does not abuse its discretion by issuing a Rule 56(g) order after its summary judgment ruling when its "opinion was clear enough and no one paying reasonable attention to the litigation" could have thought the facts later identified in a Rule 56(g) order "were still open questions." *Id*. Here, not only are the Court's summary judgment rulings "clear enough" to satisfy that standard, but the Court expressly directed counsel to be prepared to discuss all matters, including the Rule 56(g) matters, at the scheduled pretrial conference. *See* ECF No. 86 at 4. The Court, furthermore, has accepted briefing on the Rule 56(g) matters.

The Court has considered the briefing and objections regarding the Rule 56(g) matters and finds nothing therein to persuade the Court to not state the material facts that are not genuinely in dispute following its summary judgment denials and that will be treated as established in this case in accordance with Rule 56(g). RTG attempts to limit the facts subject to Rule 56(g) to facts relevant to Katona's motion for summary judgment and to her invocation of collateral estoppel. That limitation ignores the fact that the Court also denied RTG's summary judgment motion. Such denial can also prompt an order under Rule 56(g). The summary judgment evidence far exceeds the issue of collateral estoppel. But the evidence regarding estoppel bears on the Court's Rule 56(g) order.

As set out in its Prior Order, the four listed findings are no longer genuinely in dispute and the Court may appropriately enter an order stating that the underlying facts leading to those findings are established in this case. RTG merely disagrees with the findings made in the summary judgment rulings.

**C. Injunction Violation**

Very little, if anything, needs to be added to the summary judgment rulings of this Court. But the Court will highlight and explain why it disagrees with RTG's position that there was no violation of any injunction. The Court will not revisit what was stated and addressed in its order on the summary judgment motions, but it is worth mentioning that the Fifth Circuit vacated a judgment issued by the Bankruptcy Court because the Bankruptcy Court lacked jurisdiction to resolve the claims of Jackson at all and lacked constitutional authority to issue a judgment as to the claims of Katona – for her claims, the Bankruptcy Court "could recast its judgment as proposed findings and conclusions, or may otherwise dispose of the case consistent with [the Fifth Circuit's] opinion." *Galaz v. Galaz (In re Galaz)*, 765 F.3d 426, 434 (5th Cir. 2014). While the Bankruptcy Court possessed statutory jurisdiction over Katona's claims, the Fifth Circuit found that the Bankruptcy Court lacked constitutional authority to enter a final judgment. *See id.* at 430-32.

Because the Bankruptcy Court lacked authority to issue the challenged judgment, the judgment had no legal effect. *Cf. Krempp v. IRS (In re Krempp)*, 77 F.3d 476 (5th Cir. 1995) (per curiam) (finding "order appealed . . . null and void because the bankruptcy court was without jurisdiction to enter it"); *Browning v. Navarro*, 887 F.2d 553, 563 (5th Cir. 1989) (recognizing that under Texas law, "a judgment is void only when it is shown that the court had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court"); *United States v. Dunbar*, 591 F.2d 1190, 1194 (5th Cir. 1979) (finding that the court "lacked power to try and convict Dunbar," and thus the resulting "judgment of conviction was therefore null and void"), *on reh'g*, 611 F.2d 985 (5th Cir. 1980). Naturally, if the challenged judgment had no legal effect, then the earlier judgment issued by the Bankruptcy Court in November 2010 suffered the same infirmity. If both of those judgments lacked legal effect then neither of them terminated the preliminary injunction issued in 2008, which

by its terms would "continue in effect through the conclusion of trial and entry of judgment." Bankr. ECF No. 55.[1] There is no question that the Bankruptcy Court had authority to issue the preliminary injunction. *See* Fed. R. Bankr. P. 7065 (making Fed. R. Civ. P. 65 generally applicable in adversary proceedings). No legally effective judgment was entered until November 16, 2015, when the district court adopted the findings and conclusions of the Bankruptcy Court and entered final judgment that was affirmed by the Fifth Circuit on appeal.

And if the Court were to accept the argument that the November 2010 judgment of the Bankruptcy Court terminated the 2008 preliminary injunction, then the permanent injunction within that judgment was violated rather than the 2008 injunction. If the 2010 judgment had legal effect sufficient to terminate the 2008 preliminary injunction, then it would have sufficient legal effect to issue the unchallenged permanent injunction contained therein. RTG cannot have it both ways – either the judgments that converted the 2008 preliminary injunction into a permanent injunction were legally without effect or, the November 2010 injunction remained effective because it was not subject to appeal to the Fifth Circuit and the district court did not disturb the permanent injunction contained within the judgment when it affirmed as to liability but vacated and remanded for damages re-determination. The better view would be that the November 2010 judgment lacked legal effect for the same reasons the Fifth Circuit vacated the later judgment, but under either scenario, there was an injunction in place that was violated when the Jackson claim was transferred from Segundo.

One other matter deserves mention. It is undisputed that the transfer from Segundo occurred between August 2014 and January 2015. The above discussion regarding injunction violation directly addresses a transfer that occurred after August 25, 2014, the date the Fifth Circuit

---

[1] All Bankr. ECF numbers refer to electronic documents in Western District of Texas Bankruptcy Court Adversary Proceeding No. 08-5043-RBK.

vacated the challenged judgment of the Bankruptcy Court. In its summary judgment rulings, the Court assumed, as urged by RTG, that the transfer was made after the Fifth Circuit opinion. If the transfer occurred prior to that date, then technically the transfer would have violated the December 2012 permanent injunction before the Fifth Circuit had vacated the judgment containing that injunction. The 2012 judgment/injunction was not stayed pending appeal.

Of course, one might argue that violating an injunction contained in a later-vacated judgment is cured when the judgment was vacated. But such cure remedy has no place when an even earlier injunction prohibited the same transfer. The transfer would either violate the 2012 permanent injunction, or as discussed earlier, the 2010 permanent injunction, or finally, the 2008 preliminary injunction. RTG wants to find a chink or gap in the injunctive armor put in place by the Bankruptcy Court, but since the 2008 preliminary injunction, any perceived gap is simply filled by the protective injunctive layer that preceded it. And, if it was not made permanent earlier, the 2008 preliminary injunction was made permanent in the 2015 judgment that was affirmed by the Fifth Circuit.

**D. *Rooker-Feldman***[2]

RTG's reliance on *Rooker-Feldman* doctrine also warrants a brief discussion. It first appears to suggest that the parties' stipulation regarding the application of the doctrine somehow binds this Court. But it provides no authority for such position and the Court knows of none. The Court declines to be constrained by the parties' stipulation as to this legal and jurisdictional matter.

"[T]he *Rooker–Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

---

[2] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

*Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). The doctrine removes jurisdiction from the lower federal courts "to review matters 'inextricably intertwined' with a state judgment." *Gross v. Dannatt*, 736 F. App'x 493, 494 (5th Cir. 2018) (per curiam) (quoting *Feldman*, 460 U.S. at 486-87). Stated succinctly, "the doctrine applies" when "a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam).

Because Jackson was the state court loser, and is not a party to this case, the *Rooker-Feldman* doctrine is not implicated here. Furthermore, the state court judgment was a money judgment, not a judgment for the Jackson rights. Although the Jackson rights were sold to satisfy the judgment, and one might argue that the sale was inextricably intertwined with the state judgment, the Fifth Circuit has held that certain independent claims may be asserted by a state-court loser despite *Rooker-Feldman*. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382-85 (5th Cir. 2013). Given Jackson's absence from this case, the Court need not decide whether this case includes independent claims or claims that are inextricably intertwined with the state judgment. RTG has not shown how the *Rooker-Feldman* doctrine extends to the facts of this case.

**E. Conclusion Regarding Fed. R. Civ. P. 56(f)**

Katona favors entry of a Rule 56(f) summary judgment and RTG has provided no response to make such summary judgment ruling inappropriate. The Court has given reasonable notice to the parties of its intent to enter summary judgment under Rule 56(f). RTG suggests that it has only received adequate notice to the extent the Court intends to rely upon Rule 56(f)(3) because it identified certain facts to be considered as not genuinely in dispute. The Court, however, has provided notice sufficient to make RTG aware of the basis for the Court's consideration of granting summary judgment to Katona. The Court disagrees that it is confined to Rule 56(f)(3) even though that is ultimately its basis.

RTG argues that the Court cannot grant summary judgment on any theory not raised by Katona in her motion for summary judgment. But that argument is flatly refuted by Rule 56(f) itself, which permits courts to "(2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

RTG contends that the Court cannot issue a declaratory judgment without granting an underlying affirmative claim by Katona. The contention is based on Texas law regarding declaratory judgments which the Fifth Circuit has ruled "is procedural rather than substantive," and thus does not apply "in a federal court declaratory judgment diversity action." *See Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 772 (5th Cir. 1999). Nevertheless, "[b]oth Texas and federal law require the existence of a justiciable case or controversy in order to grant declaratory relief." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 F. App'x 398, 400 (5th Cir. 2011) (per curiam).

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides in pertinent part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). This unique discretion permits the federal courts discretion to "determine[] after a complaint is filed that a declaratory judgment will serve no useful purpose" and that there is no need "to proceed to the merits before staying or dismissing the action." *Id.* at 288. One would be mistaken to assume that there is any "automatic or obligatory"

12

jurisdiction for federal courts "to hear a declaratory judgment action." *Id.* (citation omitted). Rather, through

> the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.*

Given this considerable discretion and the language of § 2201, the Court disagrees that it may only grant a declaratory judgment upon granting an affirmative claim asserted by Katona. When the requisites of § 2201 are satisfied, the Courts may grant a declaratory judgment to a party even when all other claims have been dismissed. *See Peck v. Asset Mgmt. Assocs., LLC*, No. 3:17-CV-2923-N, 2018 WL 6573116, at *1 (N.D. Tex. Oct. 12, 2018). Although, undoubtedly, there must be a separate claim to invoke the jurisdiction of the federal courts, RTG invoked diversity jurisdiction in this action by asserting two state claims that have since been dismissed. In response, Katona countersued for various state claims and also sought a declaratory judgment. This case presents no question that there is a justiciable case or controversy between the parties.

In this case, both RTG and Katona have claimed ownership of the Jackson interest. They have each sought a declaratory judgment to that effect. While RTG's request for declaratory judgment failed on summary judgment, the Court found that, at that time, it was unable to declare Katona the legal owner because of a genuine dispute of material fact as to whether Jackson maintained any ownership interest. But a stipulation filed by the parties has now resolved that previously disputed fact, at least between the parties.

Accordingly, as set out in the Prior Order the Court will issue summary judgment to Katona on her request for declaratory judgment. But the discretionary nature of such relief permits the

Court to draft the declaratory judgment so as to avoid joinder concerns regarding Jackson. Based on the recent stipulation of the parties as to Jackson being divested of all rights to his prior interest and the summary judgment evidence previously submitted as viewed in a light most favorable to RTG, the Court finds that, as between Katona and RTG, Katona has the superior interest in the Jackson interest and is declared the legal owner of that interest.

As discussed at the Final Pretrial Conference, the Court remains concerned about Jackson's absence from this case. Under Fed. R. Civ. P. 19(a)(1)(B), Jackson appears to be a required party. And there is no indication that his joinder to this action would destroy diversity jurisdiction, because by all indications, Jackson is citizen of California, and the current parties are citizens of Texas and Massachusetts, *see* ECF No. 56. At this late stage of the litigation, the Court finds joinder is not feasible, but further finds that the action should proceed among the existing parties, because any prejudice to Jackson can be lessened or avoided by including protective provisions in the judgment. *See* Fed. R. Civ. P. 19(b)(2)(A).

Although the Court finds that the parties' stipulation as to the divesture of Jackson's rights to the "Jackson interest," eliminated the dispute of material fact as between the parties of this litigation, the Court is making no finding that Katona has a right of interest superior to Jackson's potential interest. That matter is beyond the scope of this litigation given Jackson's absence. But the declaratory judgment to be entered in this case will safeguard Jackson's potential interest.

## F. Additional Relief

To afford her complete relief on her declaratory judgment claim, Katona requests an award of money damages against RTG for the $257,202 that RTG has received on the Jackson Interest. The Court has discretionary authority to award money damages when a party has succeeded on a claim for declaratory judgment. *See Noatex Corp. v. King Const. of Houston, LLC*, 732 F.3d 479, 487 (5th Cir. 2013); *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558,

570-74 (5th Cir. 2005). Such authority arises from 28 U.S.C. § 2202, which states in full: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

Katona urges the Court to find that awarding her recovery from RTG of the $257,202 is necessary to restore to her what was wrongfully taken from her and the prevent RTG from being unjustly enriched. The parties have stipulated that RTG has received the identified amount since obtaining the Jackson interest. However, RTG disputes the amount to be recovered and seeks a hearing on the motion for additional relief. The request for hearing is granted.

### III. CONCLUSION

After reviewing the briefing, other relevant filings, and the applicable law, the Court grants a declaratory judgment to Defendant/Counter-Plaintiff Lisa Katona Fodera under Fed. R. Civ. P. 56(f) as stated herein. Although it has found a basis for granting *Defendant's Motion for Award of Additional Relief under 28 U.S.C. § 2202 and for Entry of Final Judgment* (ECF No. 89), it defers final ruling on that motion pending a hearing set for Wednesday, November 10, 2021, at 9:30 a.m. in the same courtroom in which trial was scheduled. However, based upon that motion and the Rule 56(f) ruling herein, the Court finds no issue remaining for trial and hereby cancels the trial setting for next week. Following the hearing, the Court will issue final judgment, declare Lisa Katona Fodera as the legal owner of the Jackson interest consistent with protections the Court will include for Julian Jackson, and order such other further relief it finds justified under the motion before the Court. All motions, other than the one for an award of additional relief, are now moot.

**It is so ORDERED this 5th day of November 2021.**

_____

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**